# 24-1436-CV(L),
## 24-1567-cv(XAP)

### In the
### United States Court of Appeals
### For the Second Circuit



ESTHER WILDER,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

SARAH HOILAND,

*Defendant-Appellee-Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLEE-CROSS-APPELLANT

GUY COHEN
DANIELLE C. ZOLOT
DAVIS + GILBERT LLP
*Attorneys for Defendant-Appellee-Cross-Appellant*
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
dzolot@dglaw.com

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .............................................................................................................3

HOILAND IS ENTITLED TO AN AWARD OF ATTORNEY'S
FEES ...........................................................................................................................3

    A.  Wilder's Claim Was Objectively Unreasonable .......................................3

    B.  Wilder's Lawsuit Was Motivated by Bad Faith .....................................12

    C.  Issuing an Award to Dr. Hoiland Will Serve the Goals of
        Compensation and Deterrence ................................................................15

CONCLUSION ........................................................................................................16

CERTIFICATE OF COMPLIANCE .....................................................................17

# TABLE OF AUTHORITIES

Page

**Cases:**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ...................................................................................3

*Blanch v. Koons*,
   485 F. Supp. 2d 516 (S.D.N.Y. 2007)..............................................12, 13, 14

*Crowley v. Jones*,
   608 F. Supp. 3d 78 (S.D.N.Y. 2022).........................................................13, 14

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998)..........................................................................6

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   327 F. Supp. 3d 606 (S.D.N.Y. 2018)..........................................................11

*Mahan v. Roc Nation, LLC*,
   14 Civ. 5075 (LGS), 2015 U.S. Dist. LEXIS 93349
   (S.D.N.Y. July 17, 2015)...............................................................................9

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020)............................................................................6

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989).......................................................................12

*Wilder v. Hoiland*,
   No. 22-cv-1254 (PKC), 2023 U.S. Dist. LEXIS 83305
   (S.D.N.Y. May 10, 2023).............................................................................14

**Rules, Laws and Statutes:**

17 U.S.C. § 505................................................................................................2

## PRELIMINARY STATEMENT

Sarah Hoiland, an Associate Professor of Sociology at Hostos Community College – a mostly Hispanic two-year community college in the Bronx – has dedicated her career to teaching and improving the lives and social mobility of community-college students, who typically face difficult financial circumstances and attend school while also working full time jobs and/or raising children. She is and has for years been actively involved in research projects designed to improve the lives of the community she serves. In addition to having previously served as a Director of the admirable NICE project,[1] Hoiland is now the Principal Investigator on the HOPE project, a five-year, NSF-funded research project that, among other things, provides support during the summer for student-parents who are taking STEM classes; concurrently provides a STEM academy for their children; and studies the effectiveness of these academic, family, and professional interventions. Hoiland also teaches a full course load at Hostos, while at the same time serving as a part-time faculty member on Bard College's Prison Initiative, which requires her to drive upstate regularly to teach sociology to incarcerated individuals at New York State correctional facilities. She's also a single mother living in New York City on a community-college professor's salary.

---

[1] Capitalized terms that are not otherwise defined herein shall have the meanings given to them in Hoiland's initial brief.

Almost six years ago and as required by the NSF grant that funded NICE, Hoiland gave a presentation about the faculty-development course during a breakout session at a community-college conference. Fewer than 20 people attended the session, during which Hoiland showed excerpts of the Course Materials as fleeting visual aids. She was pleased to provide community-college educators with an overview of a course designed to help disadvantaged students improve their math skills.

At that time, Hoiland could not have imagined that, by showing a few slides while giving advice in the public interest to her community-college peers in Florida, she would thereafter be subjected to six years of threats, baseless allegations, unabashed efforts to derail her career, and contentious federal-court litigation extending all the way up to the Second Circuit.

But here we are. And despite Esther Wilder's contentions to the contrary, the totality of the circumstances mandates an award of attorney's fees to Hoiland under Section 505 of the Copyright Act. The parties' appellate briefs underscore the objective unreasonableness of Wilder's copyright infringement claim; the bad faith with which she has pursued this claim; and the extent to which a fees award is necessary to compensate Hoiland and her attorneys and deter Wilder and similarly situated plaintiffs from pursuing unreasonable claims.

Accordingly, and for reasons discussed below, the Court should reverse the District Court's denial of attorney's fees and remand with instructions to award fees and costs to Hoiland and make specific findings as to the basis for its decision.

## ARGUMENT

## HOILAND IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES

### A. Wilder's Claim Was Objectively Unreasonable

Wilder's lengthy briefs are studies in erudite gaslighting that do not alter the objective unreasonableness of her claim. Wilder shows off her fair-use chops by waxing eloquent about *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), and other landmark cases, and she then complains that many of these cases are not "even mentioned" in Hoiland's brief. (Wilder Resp. Br. 3.) But Hoiland disregarded certain of Wilder's arguments and case cites precisely because they were designed to distract from the salient facts establishing Hoiland's fair use of the Unit 7H Text. Similarly unavailing are the many pages Wilder spends in reply plucking sentences from factually distinguishable cases in an (unsuccessful) effort to manufacture a more restrictive implied-license standard. (Wilder Resp. Br. 13-22.) Wilder's efforts do nothing to convert an unreasonable claim into a reasonable one.

The objective unreasonableness – indeed, the *absurdity* – of Wilder's claim is perhaps best shown by pausing and considering once again what happened here (or,

3

better yet, sharing the story with friends or family members and watching how they react). The following facts are not in dispute:

- Wilder recruited Hoiland as the co-Director of the NSF-funded NICE project, and the sole Director of NICE at Hostos.

- NICE was an online faculty-development course, and Wilder provided the Course Materials, including the Unit 7H Text.

- Wilder wrote the NSF Proposal, which required Hoiland to speak about the course at community-college conferences.

- Wilder imbued Hoiland with authority to independently run the NICE program at Hostos, and she placed no restrictions on Hoiland's use of the Course Materials.

- After Wilder declined her offer to co-present, Hoiland lectured about NICE to 12-20 educators during a breakout session at a community-college conference.

- Hoiland used Powerpoint slides, including several containing the Unit 7H Text, as fleeting visual aids during her oral presentation.

- Hoiland never claimed to be the author of the Unit 7H Text; she identified herself as one of two Directors, and she described at length Wilder's instrumental role in creating and developing NICHE/NICE.

One need not have mastered the intricacies of copyright law to know that Hoiland's conduct was perfectly appropriate. Common sense dictates that the

4

*director* of a faculty-development *course* may show excerpts of the *course* materials in a *course*-related presentation, especially where the (alleged) owner specifically supplied the materials for use in the course and knew that the director would be speaking about the course at conferences.

Common sense is buttressed by copyright law, and for purposes of Hoiland's appeal of the decision denying attorney's fees, as amplified by the parties' appellate briefs, the following questions arise:

Question 1: Was it objectively unreasonable to contend that Hoiland did not have Wilder's permission to use the Unit 7H Text in the CCCLA Presentation?

Answer: Yes, it was objectively unreasonable. Having imbued Hoiland with authority to independently run the NICE program at Hostos, and having placed no restrictions on Hoiland's use of the Materials, Wilder effectively granted Hoiland permission and authority to decide for herself how to use the Unit 7H Text in conference presentations. Because Wilder by her objective conduct gave implied consent for such use, it was objectively unreasonable to later contend that such permission had not been granted.

Question 2: Was it objectively unreasonable to contend that Hoiland's use of the Unit 7H Text in the CCCLA Presentation was not a fair use?

Answer: Yes, it was objectively unreasonable. Every day, speakers give lectures in which they teach about, and comment on, projects, writings, and other

copyrighted works, and they routinely project excerpts of the works to keep conference attendees engaged. These are classic, paradigmatic fair uses, and Hoiland's use was especially fair because she was speaking about her *own* (shared) project while carrying out a stated purpose of the project of which Wilder was well aware. Moreover, the use was for non-profit educational purposes that benefited the public interest; a primary goal was to teach attendees about NICE so they could potentially improve the math skills of their disadvantaged students. It was objectively unreasonable – and required willful blindness – to contend that Hoiland's use was not a fair one.

The positions Wilder has taken throughout this litigation are extraordinary – and objectively unreasonable – because she *completely* ignores that Hoiland, a *Director* of the NICE project, *independently* ran NICE at Hostos, had *authority* and *discretion* to use the Course Materials, and exercised that discretion by using the Unit 7H Text in a *grant-mandated* conference presentation. Wilder also ignores the case law placing the burden on her to establish that Hoiland's use of the Unit 7H Text fell outside the scope of the license. *See, e.g., Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("[W]hen the contested issue is the *scope* of a license, rather than the existence *of* one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license."); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (same). Based on these facts and legal principles,

Wilder was required to prove that she restricted a Director of NICE's authority to use the Unit 7H Text in NICE-related presentations so that such use somehow fell outside the scope of the Director's otherwise unrestricted license to use the Course Materials.

Wilder never even *attempts* to do so because she never restricted the scope of Hoiland's license in any way. Instead, Wilder acts as if Hoiland is some random stranger who happened upon the Course Materials and hijacked them for unlawful purposes. Straining to manufacture a restriction, Wilder makes the objectively unreasonable argument that Hoiland's use of the Materials was limited because public-facing copyright notices (though not the Course Materials themselves) stated that unauthorized use of NICHE/NICE materials was prohibited and that questions regarding authorization to use such materials should be directed to Wilder. But the Director of NICE at Hostos is not a member of the general public, and boilerplate copyright notices do not apply to Hoiland at all, much less restrict the scope of her license. It was objectively unreasonable to contend otherwise.

Wilder also argues, equally unreasonably, that Hoiland's use of the Course Materials was restricted because it required a password to access them, and a few prior presentations did not include "the full text of any course materials." (Wilder Resp. Br. 7.) These arguments hardly merit response. Most every online platform requires a password, and the NICE project's use of passwords does not limit in any

7

way the scope of Hoiland's license to use the Course Materials. Similarly, the fact that two or three prior Powerpoint presentations apparently did not include the "full text" of any Course Materials says nothing about Hoiland's authority to use the Materials in a later presentation. The burden was on Wilder to prove that she restricted Hoiland's license so that use of the Unit 7H Text in NICE-related presentations fell outside of its scope, and she utterly failed to do so.[2]

But it is not just that Wilder failed to meet her burden; it's that Wilder's positions taken throughout this litigation are objectively unreasonable *nonsense*. Of course, boilerplate copyright notices, password-protected materials, and unrelated Powerpoint presentations do not restrict the scope of Hoiland's license. As the Director of NICE at Hostos, Hoiland plainly had authority and discretion to use the Unit 7H Text in the CCCLA Presentation, and Wilder's after-the-fact contrivances underscore the objective unreasonableness of her claim.

Wilder's arguments concerning fair use are equally unreasonable. Wilder acknowledges that even if a claim does not rise to the level of frivolousness (which Wilder's claim does), it may nevertheless be objectively unreasonable if the claim is

---

[2] Wilder also tries to counter Hoiland's implied-license defense by pointing out that the CUNY ethics officer who investigated Wilder's plagiarism allegations noted that there was "no previous agreement" on what materials Hoiland could or could not use. (Wilder Resp. Br. 2.) But this argument, too, is objectively unreasonable. Plainly, the ethics officer was addressing whether Wilder and Hoiland had *expressly* agreed on how the Course Materials could be used; he did not address whether Wilder's objective conduct created an implied license authorizing Hoiland's use.

"speculative and remote" or if the "infirmity of the claim" is "pronounced." (Wilder Resp. Br. 54 (emphasis removed).) Wilder also argues generally that there is a "tendency against fees" where summary judgment arises out of the "complex, fact-driven inquiry" of the fair-use defense. (Wilder Resp. Br. 56.)

But Wilder's claim is, in fact, speculative and remote, its infirmities are indeed pronounced, and the District Court's detailed, fact-driven analysis of the fair-use factors serves to emphasize the unreasonableness of Wilder's claim. From the Decision's introduction – which notes that the case is about fleeting visual aids used in a small breakout session – through 45 pages of analysis, the District Court vividly explains the circumstances that showed how obvious it was that Hoiland's use was a fair one and why the case should never have been brought, much less litigated through summary judgment. *See Mahan v. Roc Nation, LLC*, 14 Civ. 5075 (LGS), 2015 U.S. Dist. LEXIS 93349, at *6 (S.D.N.Y. July 17, 2015) (noting "at length" discussion in court's opinion supported finding of objective unreasonableness).

Wilder has contended throughout this litigation that the scales should tip in favor of "overall reasonableness" because one of the four fair-use factors came out in her favor. (*See* Wilder Resp. Br. 56-57.) Wilder is wrong, and, indeed, a factor-by-factor analysis once again serves only to highlight the objective unreasonableness of Wilder's claim. As for the first fair-use factor, it was crystal clear that one of Hoiland's purposes was to comply in good faith with her dissemination obligations

9

under the NSF grant, a factor that tilts the scales heavily in her favor.³ In addition, it was obvious that Hoiland's further purpose – a transformative one – was not to present Wilder's work as her own, but was instead to teach educators *about* the course on which Hoiland and Wilder were co-equal Principal Investigators. And it was equally obvious that Hoiland's use was educational and served an important public interest. Indeed, and as noted, Hoiland was carrying out her dissemination obligations under the terms of an NSF grant that was designed to serve the public interest. It was objectively unreasonable to contend otherwise.

As for the fourth fair-use factor, it was obvious (to the point of absurdity) that Hoiland's fleeting use of the Unit 7H Text as a visual aid at a sparsely attended breakout session had no impact at all on Wilder's ability to commercialize or otherwise use the Materials. Hoiland did not usurp Wilder's materials, or usurp Wilder's opportunities, or otherwise take any action that impacted Wilder at all (other than to praise her profusely). The real issue was never the Unit 7H Text but was instead Wilder's unfounded fear that Hoiland was going to usurp Wilder's status as the leader of NICE and its associated research. Wilder had buyer's remorse. She asked Hoiland to serve as a Principal Investigator on the NICE project, and she

---

³ Wilder incorrectly and unreasonably contends that the Court should not consider Hoiland's efforts to comply with her obligation to disseminate information about the NICE project outside of its analysis of the implied-license defense. But fair use is a flexible doctrine and Hoiland's "purpose" – her undisputed desire to do what the NSF grant required – is a critical point to be considered under the first fair-use factor.

10

obviously regretted the choice. But Wilder's baseless concern, that Hoiland intended to move into her academic territory, has no bearing on whether Hoiland's use harmed the market for the Unit 7H Text. Plainly it did not and Wilder's contentions to the contrary are objectively unreasonable.

And contrary to Wilder's contention, the fact that one of the four fair-use factors "tend[ed] slightly in favor of Wilder" does not weigh "in favor of overall reasonableness." (SPA-40; Wilder Resp. Br. 56.) *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 643-44 (S.D.N.Y. 2018) (rejecting argument that parties' "litigating positions were reasonable [because] the Magistrate Judge accepted [one of] their argument[s]," and noting, "The fact that Defendants raised a few reasonable arguments in an ocean of unreasonable ones does not excuse their conduct.").

Finally, Wilder asserts that the "novelty of this case," and the fact that it arose in an "academic setting," weighs against a determination that the claim was objectively unreasonable. (Wilder Resp. Br. 58.) Once again, Wilder is wrong. There is nothing novel about this case. As discussed, Hoiland's was a paradigmatic fair use – it was transformative because its purpose was not to teach conference attendees what the faculty participating in the NICE program learned but to teach them *about* the program itself. It was also obvious that the Slides were not the equivalent of a research paper or other widely disseminated publication, plainly

11

distinguishing this case from the facts of *Weissmann v. Freeman*, where the defendant literally took the plaintiff's publishable paper and called it his own. 868 F.2d 1313, 1316 (2d Cir. 1989). The positions Wilder has taken throughout this litigation – both as to fair use and implied license – are objectively unreasonable and tilt the scales heavily in favor of an attorney's fees award.

### B. Wilder's Lawsuit Was Motivated by Bad Faith

The undisputed paper trail vividly shows Wilder's bad-faith desire to tarnish Hoiland's professional reputation and derail her career prospects, and Wilder fails in her efforts to sugarcoat those intentions. Wilder says that she brought this lawsuit "to deter others in Hoiland's shoes from" infringing copyrights, and she seeks to hitch her wagon to the unsuccessful plaintiff in *Blanch v. Koons*, who was not required to pay the attorney's fees of Jeff Koons, the renowned appropriation artist. 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007). Following a finding of fair use, Blanch was not required to pay Koons' fees, despite having been motivated in part by a desire to punish Koons for having "embarked on a series of appropriations of others' work without credit or payment." *Id*.

Wilder's reliance on *Blanch* falls flat because neither Wilder nor Hoiland are comparable in any way to the litigants in *Blanch*. The plaintiff in *Blanch* was, in fact, motivated by a desire to protect other artists from an artist he viewed as a serial infringer; he sought to punish an appropriation artist – one who "take[s] other *artists'*

12

work and use[s] it in their own *art*" and who "can expect that their work may attract lawsuits" such that "[t]hey must accept the risks of defense, including the time, effort and expenses involved." *Id.* at 518 (emphasis added). Wilder, it's fair to say, did not have the public interest in mind; quite the contrary, she was self-centeredly focused on derailing her junior colleague's career. And Hoiland is a far cry from Koons. In *Blanch*, the court found relevant that "litigation is a risk [Koons] incurs when he copies the other's work," particularly where he had been sued multiple times for his appropriation art. *Id.* (noting appropriation art "inherently raises difficult questions about the proper scope of copyright protection and the fair-use doctrine"). In contrast, Hoiland just wanted to tell a few educators about the helpful faculty-development program she ran, and did not, it's safe to say, anticipate being dragged into a contentious lawsuit.

Just as *Blanch* does not support Wilder's contention that she acted in good faith, her reliance on *Crowley v. Jones*, 608 F. Supp. 3d 78 (S.D.N.Y. 2022), is similarly misplaced. Wilder analogizes the instant case to *Crowley*, in which a photographer allowed a musician to use his work on the condition that he get proper attribution, and he later sued in good faith for copyright infringement because the musician allegedly used the work without giving proper attribution. One of Wilder's main gripes was that Hoiland failed to give her proper "credit," and she seems to suggest that Wilder, too, acted in good faith in bringing this lawsuit after supposedly

13

not receiving proper credit. But this is a red herring because giving Wilder "credit" was *not* a condition of Hoiland's use of the Course Materials – no such condition (or covenant, for that matter) existed, and *Crowley* does not assist Wilder's cause.

Neither *Blanch* nor *Crowley* nor any of Wilder's authorities support her assertions of good faith, and her attempts to explain the underpinnings of Wilder's motivations do not turn bad into good. Indeed, Wilder's efforts to paint over her misconduct are perhaps best rebutted by her demonstrated knowledge of her own bad faith. Recognizing that her misdeeds would be disclosed when Hoiland filed her summary judgment motion, *Wilder* moved to seal the plagiarism allegations she leveled against Hoiland with CUNY, and her specific efforts to deny Hoiland tenure. This created a bizarre situation in which the *subject* of a disciplinary proceeding had to fight for disclosure of documents concerning CUNY's investigative process. As the District Court noted in denying Wilder's application:

> An unusual feature of the applications is that the party who pursued the internal investigative process, Wilder, seeks to seal or redact materials relating to that process. Hoiland, the subject of the disciplinary inquiry, opposes the sealing and redaction requests.

*Wilder v. Hoiland*, No. 22-cv-1254 (PKC), 2023 U.S. Dist. LEXIS 83305, at *1-2 (S.D.N.Y. May 10, 2023).

Wilder's effort to conceal from public view her own allegations of research misconduct, her own allegations of plagiarism, and her own monstrous effort to deny

14

Hoiland tenure and derail her career puts the lie to her attempted revisionism and confirms her bad faith.

### C. Issuing an Award to Dr. Hoiland Will Serve the Goals of Compensation and Deterrence

Lastly, Wilder's arguments on compensation and deterrence ring hollow. The sad fact remains that Wilder has dragged Hoiland, a single mother working on a community-college professor's salary, through years of litigation for the sin of using materials from a project that Hoiland and Wilder jointly ran as visual aids in a minor conference presentation she was required to make. And the reality is that Hoiland would have been bludgeoned into an unfair and career-damaging settlement to end the litigation if she had continued to represent herself *pro se* and Davis+Gilbert had not stepped in mid-way through and taken on her case *pro bono*.

Hoiland and her lawyers should be compensated and Wilder must be deterred. And it makes no difference that Wilder and her husband are professors too (though they obviously have funding sources that Hoiland lacks) because *Wilder* chose to file this case; *Wilder* chose to litigate this case aggressively; and *Wilder* chose to double down and hire new counsel to proceed after the initial Decision granting summary judgment. In contrast, Hoiland has had no option but to litigate. Hoiland is the prevailing party, and she and her lawyers merit compensation.

15

## **CONCLUSION**

For the foregoing reasons, Dr. Sarah Hoiland respectfully requests that the Court reverse the decision of the District Court denying her motion for an award of attorney's fees and remand to the District Court for further proceedings.

Dated: New York, New York  
      January 9, 2025

Respectfully submitted,

**DAVIS+GILBERT LLP**

By: */s/ Guy Cohen*  
     Guy Cohen  
     Danielle C. Zolot  
     1675 Broadway  
     New York, New York 10019  
     (212) 468-4800  
     gcohen@dglaw.com  
     dzolot@dglaw.com

*Attorneys for Dr. Sarah Hoiland*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Second Circuit Local Rule 28.1.1(c) and FRAP 28.1 because this brief contains 3,641 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2401 in Times New Roman size 14-point font.

                                                  */s/ Guy Cohen*

                                                     Guy Cohen