UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 24-1436 (L) / 24-1567 (XAP)       _____ Caption [use short title] _____

Motion for: Motion of Appellant-Cross-Appellee

Esther Wilder to Strike Improper Sur-Reply

_____

Set forth below precise, complete statement of relief sought:

The motion requests that certain portions of

Appellee-Cross-Appellant Sarah Hoiland's

Reply Brief, dated January 9, 2025, be stricken.

The specific portions of the brief that Wilder asks to

be stricken are identified in yellow highlighting on

Exhibit A to the motion

# Wilder v. Hoiland

MOVING PARTY: Appellant-Cross-Appellee Esther Wilder     OPPOSING PARTY: Appellee-Cross-Appellant Sarah Hoiland

☑ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner  ☐ Appellee/Respondent

MOVING ATTORNEY: Matthew Hersh     OPPOSING ATTORNEY: Guy Cohen

[name of attorney, with firm, address, phone number and e-mail]

Matthew Hersh, Mestaz Law,                    Guy Cohen, Davis + Gilbert LLP

5040 N. 40th Street, Suite 200, Phoenix AZ 85018     1675 Broadway, New York, NY 10019

(602) 806 2076                                (212) 468-4800

Court- Judge/ Agency appealed from: Southern District of New York, Hon. P. Kevin Castel

Please check appropriate boxes:                FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                               INJUNCTIONS PENDING APPEAL:

Has movant notified opposing counsel (required by Local Rule 27.1):   Has this request for relief been made below? ☐ Yes ☐ No
☑ Yes ☐ No (explain):_____     Has this relief been previously sought in this court? ☐ Yes ☐ No
_____          Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:           _____
☐ Unopposed ☑ Opposed ☐ Don't Know              _____
Does opposing counsel intend to file a response:  _____
☑ Yes ☐ No ☐ Don't Know                          _____

Is oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☑ Yes ☐ No If yes, enter date: February 20, 2025

Signature of Moving Attorney:

/s/ Matthew Hersh          Date: 1/21/25     Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# 24-1436 (L)

## 24-1567 (XAP)

════════════════════════════════

# In the United States Court of Appeals for the Second Circuit

─────────────────────────────

ESTHER WILDER,
PLAINTIFF-APPELLANT-CROSS-APPELLEE

*v.*

SARAH HOILAND,
DEFENDANT-APPELLEE-CROSS-APPELLANT

─────────────────────────────

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 22-721)*

─────────────────────────────

**MOTION OF APPELLANT-CROSS-APPELLEE ESTHER
WILDER TO STRIKE IMPROPER SUR-REPLY**

─────────────────────────────

MATTHEW HERSH
MESTAZ LAW
   *5090 N. 40th Street*
   *Suite 200*
   *Phoenix, AZ 85018*
   *(602) 806-2068*

════════════════════════════════

Appellant-Cross-Appellee Esther Wilder respectfully moves to strike designated portions of the Reply Brief for Appellee-Cross-Appellant Sarah Hoiland. A cross-appellee's reply brief "must be limited to the issues presented by the cross-appeal." Fed. R. App. P. 28.1(c)(4). But Hoiland used her final cross-appeal brief to respond to the arguments in *Wilder's* Reply Brief in *Wilder's* appeal. Hoiland's Reply Brief is therefore an improper sur-reply in violation of the rules. The improper portions of her Reply Brief—highlighted in yellow in Exhibit A to this brief—should be stricken.[1]

No possible reason justifies this sur-reply. Hoiland is cross-appealing the district court's denial of her motion for attorney fees—an issue that requires her to brief, among other things, whether Wilder's position below was "objectively unreasonable." Hoiland seems to think that briefing the objective reasonableness of Wilder's position in her cross-appeal entitles her to re-brief the *merits* of Wilder's position too. She is wrong. Lack of merit and "objective unreasonableness" are not the

---

[1] On January 9, 2025, the undersigned advised Hoiland's counsel that he would be filing this motion and provided counsel with a version of Hoiland's Reply Brief containing highlights that are substantially similar to those in Exhibit A. On January 10, Hoiland's counsel stated that Hoiland would oppose the motion.

same thing. Establishing one does not establish the other. Moreover, Hoiland does not win this appeal even if she *shows* that Wilder's argument was objectively unreasonable. At this level of review, she must show that the district court *abused its discretion* by finding Wilder's position reasonable. An argument on the merits is eons away from this showing. It does not belong in Hoiland's cross-appeal reply.

Hoiland's sur-reply is inappropriate for many other reasons. For one, Hoiland defended below on the grounds of fair use and implied license. The court decided fair use in Hoiland's favor and did not reach the issue of implied license. But Hoiland now uses her Reply Brief on attorney fees to shoehorn in an argument on implied license too. This makes no sense. The court could not *conceivably* have abused its discretion by refusing to grant attorney fees over an issue it did not decide on the merits. Moreover, Hoiland's position is a naked invitation for gamesmanship. If cross-appellants in Hoiland's situation can buy themselves "a last swipe on the appeal" by filing a cross appeal on attorney fees, 16AA Fed. Prac. & Proc. Juris. § 3974.10, then they will do so even if they know the cross-appeal has no merit. That burdens the parties and the court. The motion should be granted.

2

## BACKGROUND

1. This case arises out of a dispute over Hoiland's use, at an academic conference, of materials that Wilder created. Wilder sued Hoiland for copyright infringement in the court below. Hoiland advanced two affirmative defenses: fair use and implied license. After discovery, Wilder moved for summary judgment on the question of her ownership of the work and the parties cross-moved on the two affirmative defenses. The district court denied Wilder's motion for summary judgment on the question of ownership and fair use, granted Hoiland's motion for summary judgment on the question of fair use, and entered judgment in favor of Hoiland. SPA-1; SPA-46. The court did not address Hoiland's defense of implied license.

Hoiland then moved for an order awarding her attorney fees. In her motion, she argued that Wilder's position on fair use had been objectively unreasonable, that Wilder's infringement claim was brought in bad faith, and that an award of attorney fees would advance the goals of compensation and deterrence. Memorandum in Support of Defendant's Motion for Attorney Fees and Costs, pp. 5-15, ECF 92; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (setting forth

factors). Hoiland did not argue that Wilder's position on *implied license* was unreasonable (because the district court, of course, had not yet decided that issue on the merits). The district court denied the motion, finding that the fair use factors—including the crucial "objectively reasonable" factor—did not support an award of fees. SPA-54-56.

2. The parties cross-appealed to this Court, with Wilder appealing the fair use and ownership rulings on the merits, and Hoiland cross-appealing the order denying attorney fees. Hoiland did not cross-appeal on the issue of implied license. Pursuant to the briefing schedule provided for cross-appeals in Fed. R. App. P. 28.1, the parties submitted briefs as follows:

*Appellant's Principal Brief*: Wilder filed her Principal Brief in support of her appeal on August 5, 2024. The brief asked this Court to reverse the grant of summary judgment to Hoiland on the issue of fair use, reverse the denial of summary judgment to Wilder on the issue of fair use, and reverse the denial of summary judgment to Wilder on the issue of ownership.

*Appellee's Principal and Response Brief*. Hoiland filed her Principal and Response brief on November 4, 2024. The Response portion of

Hoiland's brief addressed the arguments in Wilder's Principal brief on the merits. The Response portion of Hoiland's brief also (permissibly) sought affirmance on the alternative ground that Hoiland had an implied license—an issue not decided below and therefore not raised in Wilder's Principal Brief.

The Principal portion of Hoiland's brief, by contrast, was limited to her cross-appeal of the court's denial of her motion for attorney fees. In that portion of her brief, which spanned roughly 11 pages, Hoiland did not re-argue the merits of the case. Instead, as she did below, Hoiland argued that Wilder's infringement claim was objectively unreasonable, that Wilder's infringement claim was brought in bad faith, and that an award of attorney fees to Hoiland would advance the goals of compensation and deterrence. In arguing that Wilder's position was objectively unreasonable, Hoiland focused exclusively on the issue of fair use—without any mention of Wilder's position on implied license. Notably, Hoiland's argument that Wilder's claim was objectively unreasonable spanned only about 2.5 pages of her 71-page brief.

*Appellant's Response and Reply Brief.* Wilder filed her Response and Reply Brief on December 19, 2024. In the Reply portion of her brief,

Wilder again briefed the issues of fair use and ownership. She also briefed, in response to Hoiland's alternative ground for affirmance, the issue of implied license. In the Response portion of her brief, Wilder briefed the issue of attorney fees.

*Appellee's Reply Brief.* Hoiland filed her cross-appeal Reply Brief on January 9, 2025. Under the guise of briefing the "objective reasonableness" prong of the attorney fee standard, Hoiland now also re-briefed the *merits* of the fair use and implied license issues that—to that point—had been briefed only as part of the merits appeal. Thus, the "objective reasonableness" argument in her cross-appeal ballooned by nearly *four times* between her Principal and Reply briefs. A comparison of Hoiland's Principal Brief and her Reply Brief on cross-appeal is instructive:

|  | Hoiland's Principal and Response Brief on Cross-Appeal: "Objective Reasonableness" Factor | Hoiland's Reply Brief on Cross-Appeal: "Objective Reasonableness" Factor |
|---|---|---|
| Pages | 2.5 | 9 |
| Words | 558 | 2,204 |

A page-by-page examination of Hoiland's cross-appeal Reply Brief also highlights how she has entitled herself to a sur-reply on the merits:

*Page 3 (paragraph labelled "A")*: In the highlighted text, Hoiland expressly replies to Wilder's Reply Brief on the merits, claiming that Wilder's "briefs" (plural) are "studies in erudite gaslighting," rejecting Wilder's analysis of *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) (a case analyzed in Wilder's Principal and Reply Briefs on the merits but not mentioned *at all* in Hoiland's Principal Brief on attorney fees), and criticizing "the many pages Wilder spen[t] *in reply* plucking sentences from factually distinguishable cases" (emphasis added). None of the arguments in this brief were contained in Hoiland's briefing on attorney fees before the district court. Memorandum in Support of Defendant's Motion for Attorney Fees and Costs, pp. 5-9, ECF 92; Reply Memorandum in Support of Defendant's Motion for Attorney Fees and Costs, pp. 1-5, ECF 103. Nor were they contained in Hoiland's Principal Brief on her cross-appeal to *this* Court. They were merely responses to the arguments in Wilder's Reply Brief on the merits.

*Pages 3-10, 12 (highlighted sections starting with "B," "C," "D," "E," "F," "G," and "H")*: The roughly five pages of highlighted text here address

the merits of Wilder's appeal on the issue of implied license. As noted above, the district court did not rule on the issue of implied license below. *Supra* at 3. As a result, the implied license issue played no role in Hoiland's motion for attorney fees below, *supra* at 4, Hoiland did not cross-appeal on the issue of implied license, *supra* at 4, and the implied license issue played no role in Hoiland's Principal Brief in her cross-appeal on attorney fees. *Supra* at 5. Nonetheless, Hoiland used her Reply Brief on the attorney fees issue to extensively brief the implied license issue in response to Wilder's Reply Brief arguments. Again, none of these arguments were contained in Hoiland's brief on attorney fees before the trial court nor in her Principal Brief on her cross-appeal in this court.

## ARGUMENT

The highlighted passages of Hoiland's Reply Brief should be stricken. Under the Federal Rules of Appellate Procedure, a cross-appellee's reply brief "must be limited to the issues presented by the cross-appeal." Fed. R. App. P. 28.1(c)(4). Hoiland's Reply Brief is not remotely limited to her cross-appeal. To the contrary, her brief "effectively constitutes two briefs: (1) Cross-Appellant [Hoiland's] Reply Brief, and (2) Appellee [Hoiland's] Sur-Reply Brief." *Echo Acceptance*

*Corp. v. Household Retail Services, Inc.*, 267 F.3d 1068, 1091–92 (10th Cir. 2001). "Only the first of the two is authorized by the Federal Rules of Appellate Procedure." *Id*. Courts routinely strike cross-appeal reply briefs that do not comply with this rule. *E.g., USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006); *see also Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1361 (Fed. Cir. 2005) ("We note a troubling trend for the counsel of cross-appellants to disregard the rule limiting their reply brief to issues concerning the cross-appeal. The filing of improper sur-reply arguments is unfair to appellants who bear the burden of demonstrating prejudicial error in the decision being appealed and, therefore, are entitled to the last word in both the briefs and at oral argument on their appeal.") (cleaned up); 16AA Fed. Prac. & Proc. Juris. § 3974.10 (5th ed.) ("the appellee cannot use its reply brief in the cross-appeal to get in a last swipe on the appeal").[2]

---

[2] *See also Bierman Family Farm LLC/King Mulch/King Farms v. United Farm Family Ins. Co.*, 812 Fed. Appx. 139, 145 (4th Cir. 2020) (striking portions of cross-appeal reply brief that did not comply with Rule 28.1(c)(4); *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 526 (5th Cir. 2002) (same); *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 644 (8th Cir. 1997) (same).

9

Hoiland will presumably argue that her reply was permissible because the question of whether Wilder's claim was *right* overlaps with the question of whether Wilder's claim was *reasonable*. That argument is without merit. There are many reasons why.

1. Begin with the obvious: Lack of merit and "objective unreasonableness" are not the same thing. "Not all unsuccessful litigated claims are objectively unreasonable. The infirmity of the claim, while falling short of branding it as frivolous or harassing, must nonetheless be pronounced." *CK Co. v. Burger King Corp.*, 92 CIV 1488 (CSH), 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995); *see also Barcroft Media, Ltd. v. Coed Media Group, LLC*, 16 CIV 7634 (JMF), 2018 WL 357298, at *2 (S.D.N.Y. Jan. 10, 2018) (even where case was "not ultimately a close one," attorney fees not appropriate where losing party's arguments were not "so frivolous or objectively unreasonable that no party could see an opening . . . through which the argument[s] could be squeezed"); *Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 08 CIV 6195 (PKC), 2011 WL 2565373, at *1 (S.D.N.Y. June 14, 2011) ("The conclusion that no reasonable jury could find copyright infringement on the part of [the prevailing party] is not tantamount to a

10

finding that the positions asserted by [the losing party] were objectively unreasonable."). Hoiland won on the merits of her fair use claim below. Her attorney fees motion turned on whether Wilder's position, even if wrong, was also *unreasonable*. Hoiland could not have advanced her argument on attorney fees below simply by re-arguing the merits. She cannot win this appeal by re-arguing the merits either.

2. This is especially true where, as here, the standard of review on appeal is even *further* removed from the merits of the fair use defense below. Hoiland not only has to show that Wilder's claim was objectively reasonable; she now has to show that the court below *abused its discretion* by deciding against her—one of the most "deferential standards of review" there is. *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir.1992) (*per curiam*). Hoiland cannot possibly believe that continuing to hammer away at the merits will advance her appeal under this standard. In Hoiland's apparent view of this appeal, she can show that the district court *abused its discretion*, in finding that Wilder's claim was *objectively reasonable*, merely because Wilder's arguments were *wrong*. That is of course not remotely true. It cannot be window dressing for this sur-reply.

3. Hoiland's position not only makes a mockery of Rule 28.1. It also jettisons this Court's longstanding precedent when it comes to adding new arguments out of time. Not one of the highlighted arguments in Hoiland's *Reply Brief* on attorney fees was made in Hoiland's *Principal Brief* on attorney fees. And not one of them was included in Hoiland's briefing on attorney fees before the *district court*. In any other scenario, that would disqualify Hoiland's briefing on these subjects entirely. *E,g., Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir. 1982) ("A party who has not raised an issue below is precluded from raising it for the first time on appeal") (cleaned up). These foundational rules are not suddenly mooted by an attorney fees cross-appeal.

4. All of these arguments apply with even greater force when it comes to Hoiland's argument on the implied license issue. As noted earlier, the district court did not even rule on Hoiland's affirmative defense of implied license. As a result, Hoiland could raise the issue only as she did—as an alternative ground for affirmance on the merits. She

12

could not (and did not) *cross-appeal* on the implied license issue.[3] And since she did not cross-appeal on the implied license issue, she certainly cannot argue the implied license issue in her cross-appeal *brief*. But that is what she has done. By the same token, regardless of what this Court eventually decides when it comes to implied license, that *still* could have no bearing on the issue of attorney fees. The trial court did not rule on Wilder's position on implied license. It could not *possibly* have abused its discretion in not finding that Wilder's position on implied license was unreasonable. The argument has no business being part of this cross-appeal.

5. Finally, Hoiland's position is a naked invitation for gamesmanship. The courts of appeal have warned against the situation where "an appellee files an unnecessary cross-appeal when it seeks only an affirmance of the district court order and thereby sets up a situation in which it inappropriately can file an additional brief." *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006) (cleaned up). If cross-appellants in Hoiland's situation can buy themselves "a last swipe

---

[3] *See, e.g., Kontakis v. Beyer*, 19 F.3d 110, 112 (3d Cir. 1994) (dismissing cross-appeal because appellee "could have advanced the issues specified in his cross-appeal as alternative grounds to affirm").

13

on the appeal" by filing a cross appeal on attorney fees, 16AA Fed. Prac. & Proc. Juris. § 3974.10, then they will do so even if they know the appeal has no merit. That burdens the parties and the Court—and makes a mockery of the cross-appeal sequencing carefully drawn by the Federal Rules of Appellate Procedure. It cannot be what the drafters of those rules had in mind.

## CONCLUSION

The Court should strike those portions of Hoiland's cross-appeal reply brief that are highlighted in yellow in the attached Exhibit A.

Respectfully submitted,

/s/ *Matthew Hersh*
Matthew Hersh
MESTAZ LAW
5090 N. 40th Street
Suite 200
Phoenix, AZ 85018
Telephone: (602) 806-2068

*Counsel for Appellant-Cross-Appellee Esther Wilder*

Dated: January 21, 2025

14

## CERTIFICATE OF SERVICE

I, Matthew Hersh, hereby certify that on January 21, 2025, I filed the foregoing Motion of Appellant-Cross-Appellee Esther Wilder to Strike Improper Sur-reply through this Court's CM/ECF system, that counsel for all parties are registered CM/ECF users, and that service of all parties will be accomplished through the CM/ECF system.

/s/ *Matthew Hersh*
*Counsel for Appellant-Cross-Appellee*
*Esther Wilder*

Exhibit A

# 24-1436-CV(L),
## 24-1567-cv(XAP)

In the

## United States Court of Appeals
### For the Second Circuit

ESTHER WILDER,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

SARAH HOILAND,

*Defendant-Appellee-Cross-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLEE-CROSS-APPELLANT

GUY COHEN
DANIELLE C. ZOLOT
DAVIS + GILBERT LLP
*Attorneys for Defendant-Appellee-Cross-Appellant*
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
dzolot@dglaw.com

APPELLATE INNOVATIONS
(914) 948-2240
22460

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................1

ARGUMENT ..................................................................................3

HOILAND IS ENTITLED TO AN AWARD OF ATTORNEY'S
FEES ..............................................................................................3

    A. Wilder's Claim Was Objectively Unreasonable ....................3

    B. Wilder's Lawsuit Was Motivated by Bad Faith ...................12

    C. Issuing an Award to Dr. Hoiland Will Serve the Goals of
       Compensation and Deterrence .............................................15

CONCLUSION .............................................................................16

CERTIFICATE OF COMPLIANCE ..............................................17

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases:</u>

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ............................................................3

*Blanch v. Koons*,
   485 F. Supp. 2d 516 (S.D.N.Y. 2007)...............................12, 13, 14

*Crowley v. Jones*,
   608 F. Supp. 3d 78 (S.D.N.Y. 2022)........................................13, 14

*Graham v. James*,
   144 F.3d 229 (2d Cir. 1998)..................................................6

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   327 F. Supp. 3d 606 (S.D.N.Y. 2018)....................................11

*Mahan v. Roc Nation, LLC*,
   14 Civ. 5075 (LGS), 2015 U.S. Dist. LEXIS 93349
   (S.D.N.Y. July 17, 2015)......................................................9

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020)..................................................6

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989)..............................................12

*Wilder v. Hoiland*,
   No. 22-cv-1254 (PKC), 2023 U.S. Dist. LEXIS 83305
   (S.D.N.Y. May 10, 2023)....................................................14

## <u>Rules, Laws and Statutes:</u>

17 U.S.C. § 505 ..................................................................2

## PRELIMINARY STATEMENT

Sarah Hoiland, an Associate Professor of Sociology at Hostos Community College – a mostly Hispanic two-year community college in the Bronx – has dedicated her career to teaching and improving the lives and social mobility of community-college students, who typically face difficult financial circumstances and attend school while also working full time jobs and/or raising children. She is and has for years been actively involved in research projects designed to improve the lives of the community she serves. In addition to having previously served as a Director of the admirable NICE project,[1] Hoiland is now the Principal Investigator on the HOPE project, a five-year, NSF-funded research project that, among other things, provides support during the summer for student-parents who are taking STEM classes; concurrently provides a STEM academy for their children; and studies the effectiveness of these academic, family, and professional interventions. Hoiland also teaches a full course load at Hostos, while at the same time serving as a part-time faculty member on Bard College's Prison Initiative, which requires her to drive upstate regularly to teach sociology to incarcerated individuals at New York State correctional facilities. She's also a single mother living in New York City on a community-college professor's salary.

---

[1] Capitalized terms that are not otherwise defined herein shall have the meanings given to them in Hoiland's initial brief.

Almost six years ago and as required by the NSF grant that funded NICE, Hoiland gave a presentation about the faculty-development course during a breakout session at a community-college conference. Fewer than 20 people attended the session, during which Hoiland showed excerpts of the Course Materials as fleeting visual aids. She was pleased to provide community-college educators with an overview of a course designed to help disadvantaged students improve their math skills.

At that time, Hoiland could not have imagined that, by showing a few slides while giving advice in the public interest to her community-college peers in Florida, she would thereafter be subjected to six years of threats, baseless allegations, unabashed efforts to derail her career, and contentious federal-court litigation extending all the way up to the Second Circuit.

But here we are. And despite Esther Wilder's contentions to the contrary, the totality of the circumstances mandates an award of attorney's fees to Hoiland under Section 505 of the Copyright Act. The parties' appellate briefs underscore the objective unreasonableness of Wilder's copyright infringement claim; the bad faith with which she has pursued this claim; and the extent to which a fees award is necessary to compensate Hoiland and her attorneys and deter Wilder and similarly situated plaintiffs from pursuing unreasonable claims.

Accordingly, and for reasons discussed below, the Court should reverse the District Court's denial of attorney's fees and remand with instructions to award fees and costs to Hoiland and make specific findings as to the basis for its decision.

## ARGUMENT

### HOILAND IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES

#### A. Wilder's Claim Was Objectively Unreasonable

Wilder's lengthy briefs are studies in erudite gaslighting that do not alter the objective unreasonableness of her claim. Wilder shows off her fair-use chops by waxing eloquent about *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), and other landmark cases, and she then complains that many of these cases are not "even mentioned" in Hoiland's brief. (Wilder Resp. Br. 3.) But Hoiland disregarded certain of Wilder's arguments and case cites precisely because they were designed to distract from the salient facts establishing Hoiland's fair use of the Unit 7H Text. Similarly unavailing are the many pages Wilder spends in reply plucking sentences from factually distinguishable cases in an (unsuccessful) effort to manufacture a more restrictive implied-license standard. (Wilder Resp. Br. 13-22.) Wilder's efforts do nothing to convert an unreasonable claim into a reasonable one.

The objective unreasonableness – indeed, the *absurdity* – of Wilder's claim is perhaps best shown by pausing and considering once again what happened here (or,

3

better yet, sharing the story with friends or family members and watching how they react).  The following facts are not in dispute:

- Wilder recruited Hoiland as the co-Director of the NSF-funded NICE project, and the sole Director of NICE at Hostos.

- NICE was an online faculty-development course, and Wilder provided the Course Materials, including the Unit 7H Text.

- Wilder wrote the NSF Proposal, which required Hoiland to speak about the course at community-college conferences.

- Wilder imbued Hoiland with authority to independently run the NICE program at Hostos, and she placed no restrictions on Hoiland's use of the Course Materials.

- After Wilder declined her offer to co-present, Hoiland lectured about NICE to 12-20 educators during a breakout session at a community-college conference.

- Hoiland used Powerpoint slides, including several containing the Unit 7H Text, as fleeting visual aids during her oral presentation.

-  Hoiland never claimed to be the author of the Unit 7H Text; she identified herself as one of two Directors, and she described at length Wilder's instrumental role in creating and developing NICHE/NICE.

One need not have mastered the intricacies of copyright law to know that **C** Hoiland's conduct was perfectly appropriate.  Common sense dictates that the

*director* of a faculty-development *course* may show excerpts of the *course* materials in a *course*-related presentation, especially where the (alleged) owner specifically supplied the materials for use in the course and knew that the director would be speaking about the course at conferences.

Common sense is buttressed by copyright law, and for purposes of Hoiland's appeal of the decision denying attorney's fees, as amplified by the parties' appellate briefs, the following questions arise:

Question 1: Was it objectively unreasonable to contend that Hoiland did not have Wilder's permission to use the Unit 7H Text in the CCCLA Presentation?

Answer: Yes, it was objectively unreasonable. Having imbued Hoiland with authority to independently run the NICE program at Hostos, and having placed no restrictions on Hoiland's use of the Materials, Wilder effectively granted Hoiland permission and authority to decide for herself how to use the Unit 7H Text in conference presentations. Because Wilder by her objective conduct gave implied consent for such use, it was objectively unreasonable to later contend that such permission had not been granted.

Question 2: Was it objectively unreasonable to contend that Hoiland's use of the Unit 7H Text in the CCCLA Presentation was not a fair use?

Answer: Yes, it was objectively unreasonable. Every day, speakers give lectures in which they teach about, and comment on, projects, writings, and other

copyrighted works, and they routinely project excerpts of the works to keep conference attendees engaged. These are classic, paradigmatic fair uses, and Hoiland's use was especially fair because she was speaking about her *own* (shared) project while carrying out a stated purpose of the project of which Wilder was well aware. Moreover, the use was for non-profit educational purposes that benefited the public interest; a primary goal was to teach attendees about NICE so they could potentially improve the math skills of their disadvantaged students. It was objectively unreasonable – and required willful blindness – to contend that Hoiland's use was not a fair one.

The positions Wilder has taken throughout this litigation are extraordinary – and objectively unreasonable – because she *completely* ignores that Hoiland, a *Director* of the NICE project, *independently* ran NICE at Hostos, had *authority* and *discretion* to use the Course Materials, and exercised that discretion by using the Unit 7H Text in a *grant-mandated* conference presentation. Wilder also ignores the case law placing the burden on her to establish that Hoiland's use of the Unit 7H Text fell outside the scope of the license. *See, e.g.*, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("[W]hen the contested issue is the *scope* of a license, rather than the existence *of* one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license."); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (same). Based on these facts and legal principles,

Wilder was required to prove that she restricted a Director of NICE's authority to use the Unit 7H Text in NICE-related presentations so that such use somehow fell outside the scope of the Director's otherwise unrestricted license to use the Course Materials.

Wilder never even *attempts* to do so because she never restricted the scope of Hoiland's license in any way. Instead, Wilder acts as if Hoiland is some random stranger who happened upon the Course Materials and hijacked them for unlawful purposes. Straining to manufacture a restriction, Wilder makes the objectively unreasonable argument that Hoiland's use of the Materials was limited because public-facing copyright notices (though not the Course Materials themselves) stated that unauthorized use of NICHE/NICE materials was prohibited and that questions regarding authorization to use such materials should be directed to Wilder. But the Director of NICE at Hostos is not a member of the general public, and boilerplate copyright notices do not apply to Hoiland at all, much less restrict the scope of her license. It was objectively unreasonable to contend otherwise.

Wilder also argues, equally unreasonably, that Hoiland's use of the Course Materials was restricted because it required a password to access them, and a few prior presentations did not include "the full text of any course materials." (Wilder Resp. Br. 7.) These arguments hardly merit response. Most every online platform requires a password, and the NICE project's use of passwords does not limit in any

way the scope of Hoiland's license to use the Course Materials. Similarly, the fact that two or three prior Powerpoint presentations apparently did not include the "full text" of any Course Materials says nothing about Hoiland's authority to use the Materials in a later presentation. The burden was on Wilder to prove that she restricted Hoiland's license so that use of the Unit 7H Text in NICE-related presentations fell outside of its scope, and she utterly failed to do so.[2]

But it is not just that Wilder failed to meet her burden; it's that Wilder's positions taken throughout this litigation are objectively unreasonable *nonsense*. Of course, boilerplate copyright notices, password-protected materials, and unrelated Powerpoint presentations do not restrict the scope of Hoiland's license. As the Director of NICE at Hostos, Hoiland plainly had authority and discretion to use the Unit 7H Text in the CCCLA Presentation, and Wilder's after-the-fact contrivances underscore the objective unreasonableness of her claim.

Wilder's arguments concerning fair use are equally unreasonable. Wilder acknowledges that even if a claim does not rise to the level of frivolousness (which Wilder's claim does), it may nevertheless be objectively unreasonable if the claim is

---

[2] Wilder also tries to counter Hoiland's implied-license defense by pointing out that the CUNY ethics officer who investigated Wilder's plagiarism allegations noted that there was "no previous agreement" on what materials Hoiland could or could not use. (Wilder Resp. Br. 2.) But this argument, too, is objectively unreasonable. Plainly, the ethics officer was addressing whether Wilder and Hoiland had *expressly* agreed on how the Course Materials could be used; he did not address whether Wilder's objective conduct created an implied license authorizing Hoiland's use.

E

"speculative and remote" or if the "infirmity of the claim" is "pronounced." (Wilder Resp. Br. 54 (emphasis removed).) Wilder also argues generally that there is a "tendency against fees" where summary judgment arises out of the "complex, fact-driven inquiry" of the fair-use defense. (Wilder Resp. Br. 56.)

But Wilder's claim is, in fact, speculative and remote, its infirmities are indeed pronounced, and the District Court's detailed, fact-driven analysis of the fair-use factors serves to emphasize the unreasonableness of Wilder's claim. From the Decision's introduction – which notes that the case is about fleeting visual aids used in a small breakout session – through 45 pages of analysis, the District Court vividly explains the circumstances that showed how obvious it was that Hoiland's use was a fair one and why the case should never have been brought, much less litigated through summary judgment. *See Mahan v. Roc Nation, LLC*, 14 Civ. 5075 (LGS), 2015 U.S. Dist. LEXIS 93349, at *6 (S.D.N.Y. July 17, 2015) (noting "at length" discussion in court's opinion supported finding of objective unreasonableness).

Wilder has contended throughout this litigation that the scales should tip in favor of "overall reasonableness" because one of the four fair-use factors came out in her favor. (*See* Wilder Resp. Br. 56-57.) Wilder is wrong, and, indeed, a factor-by-factor analysis once again serves only to highlight the objective unreasonableness of Wilder's claim. As for the first fair-use factor, it was crystal clear that one of Hoiland's purposes was to comply in good faith with her dissemination obligations

9

under the NSF grant, a factor that tilts the scales heavily in her favor.[3]  In addition,
it was obvious that Hoiland's further purpose – a transformative one – was not to
present Wilder's work as her own, but was instead to teach educators *about* the
course on which Hoiland and Wilder were co-equal Principal Investigators.  And it
was equally obvious that Hoiland's use was educational and served an important
public interest.  Indeed, and as noted, Hoiland was carrying out her dissemination
obligations under the terms of an NSF grant that was designed to serve the public
interest.  It was objectively unreasonable to contend otherwise.

As for the fourth fair-use factor, it was obvious (to the point of absurdity) that
Hoiland's fleeting use of the Unit 7H Text as a visual aid at a sparsely attended
breakout session had no impact at all on Wilder's ability to commercialize or
otherwise use the Materials.  Hoiland did not usurp Wilder's materials, or usurp
Wilder's opportunities, or otherwise take any action that impacted Wilder at all
(other than to praise her profusely).  The real issue was never the Unit 7H Text but
was instead Wilder's unfounded fear that Hoiland was going to usurp Wilder's status
as the leader of NICE and its associated research.  Wilder had buyer's remorse.  She
asked Hoiland to serve as a Principal Investigator on the NICE project, and she

---

[3] Wilder incorrectly and unreasonably contends that the Court should not consider
Hoiland's efforts to comply with her obligation to disseminate information about the
NICE project outside of its analysis of the implied-license defense.  But fair use is a
flexible doctrine and Hoiland's "purpose" – her undisputed desire to do what the
NSF grant required – is a critical point to be considered under the first fair-use factor.

**G**

10

obviously regretted the choice. But Wilder's baseless concern, that Hoiland intended to move into her academic territory, has no bearing on whether Hoiland's use harmed the market for the Unit 7H Text. Plainly it did not and Wilder's contentions to the contrary are objectively unreasonable.

And contrary to Wilder's contention, the fact that one of the four fair-use factors "tend[ed] slightly in favor of Wilder" does not weigh "in favor of overall reasonableness." (SPA-40; Wilder Resp. Br. 56.) *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 643-44 (S.D.N.Y. 2018) (rejecting argument that parties' "litigating positions were reasonable [because] the Magistrate Judge accepted [one of] their argument[s]," and noting, "The fact that Defendants raised a few reasonable arguments in an ocean of unreasonable ones does not excuse their conduct.").

Finally, Wilder asserts that the "novelty of this case," and the fact that it arose in an "academic setting," weighs against a determination that the claim was objectively unreasonable. (Wilder Resp. Br. 58.) Once again, Wilder is wrong. There is nothing novel about this case. As discussed, Hoiland's was a paradigmatic fair use – it was transformative because its purpose was not to teach conference attendees what the faculty participating in the NICE program learned but to teach them *about* the program itself. It was also obvious that the Slides were not the equivalent of a research paper or other widely disseminated publication, plainly

distinguishing this case from the facts of *Weissmann v. Freeman*, where the defendant literally took the plaintiff's publishable paper and called it his own. 868 F.2d 1313, 1316 (2d Cir. 1989). The positions Wilder has taken throughout this litigation – both as to fair use and implied license – are objectively unreasonable and tilt the scales heavily in favor of an attorney's fees award.

### B. Wilder's Lawsuit Was Motivated by Bad Faith

The undisputed paper trail vividly shows Wilder's bad-faith desire to tarnish Hoiland's professional reputation and derail her career prospects, and Wilder fails in her efforts to sugarcoat those intentions. Wilder says that she brought this lawsuit "to deter others in Hoiland's shoes from" infringing copyrights, and she seeks to hitch her wagon to the unsuccessful plaintiff in *Blanch v. Koons*, who was not required to pay the attorney's fees of Jeff Koons, the renowned appropriation artist. 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007). Following a finding of fair use, Blanch was not required to pay Koons' fees, despite having been motivated in part by a desire to punish Koons for having "embarked on a series of appropriations of others' work without credit or payment." *Id.*

Wilder's reliance on *Blanch* falls flat because neither Wilder nor Hoiland are comparable in any way to the litigants in *Blanch*. The plaintiff in *Blanch* was, in fact, motivated by a desire to protect other artists from an artist he viewed as a serial infringer; he sought to punish an appropriation artist – one who "take[s] other *artists'*

12

work and use[s] it in their own *art*" and who "can expect that their work may attract lawsuits" such that "[t]hey must accept the risks of defense, including the time, effort and expenses involved." *Id.* at 518 (emphasis added). Wilder, it's fair to say, did not have the public interest in mind; quite the contrary, she was self-centeredly focused on derailing her junior colleague's career. And Hoiland is a far cry from Koons. In *Blanch*, the court found relevant that "litigation is a risk [Koons] incurs when he copies the other's work," particularly where he had been sued multiple times for his appropriation art. *Id.* (noting appropriation art "inherently raises difficult questions about the proper scope of copyright protection and the fair-use doctrine"). In contrast, Hoiland just wanted to tell a few educators about the helpful faculty-development program she ran, and did not, it's safe to say, anticipate being dragged into a contentious lawsuit.

Just as *Blanch* does not support Wilder's contention that she acted in good faith, her reliance on *Crowley v. Jones*, 608 F. Supp. 3d 78 (S.D.N.Y. 2022), is similarly misplaced. Wilder analogizes the instant case to *Crowley*, in which a photographer allowed a musician to use his work on the condition that he get proper attribution, and he later sued in good faith for copyright infringement because the musician allegedly used the work without giving proper attribution. One of Wilder's main gripes was that Hoiland failed to give her proper "credit," and she seems to suggest that Wilder, too, acted in good faith in bringing this lawsuit after supposedly

13

not receiving proper credit.  But this is a red herring because giving Wilder "credit" was *not* a condition of Hoiland's use of the Course Materials – no such condition (or covenant, for that matter) existed, and *Crowley* does not assist Wilder's cause.

Neither *Blanch* nor *Crowley* nor any of Wilder's authorities support her assertions of good faith, and her attempts to explain the underpinnings of Wilder's motivations do not turn bad into good.  Indeed, Wilder's efforts to paint over her misconduct are perhaps best rebutted by her demonstrated knowledge of her own bad faith.  Recognizing that her misdeeds would be disclosed when Hoiland filed her summary judgment motion, *Wilder* moved to seal the plagiarism allegations she leveled against Hoiland with CUNY, and her specific efforts to deny Hoiland tenure.  This created a bizarre situation in which the *subject* of a disciplinary proceeding had to fight for disclosure of documents concerning CUNY's investigative process.  As the District Court noted in denying Wilder's application:

> An unusual feature of the applications is that the party who pursued the internal investigative process, Wilder, seeks to seal or redact materials relating to that process.  Hoiland, the subject of the disciplinary inquiry, opposes the sealing and redaction requests.

*Wilder v. Hoiland*, No. 22-cv-1254 (PKC), 2023 U.S. Dist. LEXIS 83305, at *1-2 (S.D.N.Y. May 10, 2023).

Wilder's effort to conceal from public view her own allegations of research misconduct, her own allegations of plagiarism, and her own monstrous effort to deny

14

Hoiland tenure and derail her career puts the lie to her attempted revisionism and confirms her bad faith.

### C. Issuing an Award to Dr. Hoiland Will Serve the Goals of Compensation and Deterrence

Lastly, Wilder's arguments on compensation and deterrence ring hollow. The sad fact remains that Wilder has dragged Hoiland, a single mother working on a community-college professor's salary, through years of litigation for the sin of using materials from a project that Hoiland and Wilder jointly ran as visual aids in a minor conference presentation she was required to make. And the reality is that Hoiland would have been bludgeoned into an unfair and career-damaging settlement to end the litigation if she had continued to represent herself *pro se* and Davis+Gilbert had not stepped in mid-way through and taken on her case *pro bono*.

Hoiland and her lawyers should be compensated and Wilder must be deterred. And it makes no difference that Wilder and her husband are professors too (though they obviously have funding sources that Hoiland lacks) because *Wilder* chose to file this case; *Wilder* chose to litigate this case aggressively; and *Wilder* chose to double down and hire new counsel to proceed after the initial Decision granting summary judgment. In contrast, Hoiland has had no option but to litigate. Hoiland is the prevailing party, and she and her lawyers merit compensation.

## <u>CONCLUSION</u>

For the foregoing reasons, Dr. Sarah Hoiland respectfully requests that the Court reverse the decision of the District Court denying her motion for an award of attorney's fees and remand to the District Court for further proceedings.

Dated: New York, New York
      January 9, 2025

Respectfully submitted,

**DAVIS+GILBERT LLP**

By: */s/ Guy Cohen*
    Guy Cohen
    Danielle C. Zolot
    1675 Broadway
    New York, New York 10019
    (212) 468-4800
    gcohen@dglaw.com
    dzolot@dglaw.com

    *Attorneys for Dr. Sarah Hoiland*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the type-volume limitation of Second Circuit Local Rule 28.1.1(c) and FRAP 28.1 because this brief contains 3,641 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). I further hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2401 in Times New Roman size 14-point font.


_/s/ Guy Cohen_

Guy Cohen