24-1436 (L)
*Wilder v. Hoiland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand twenty-five.

Present:
       DEBRA ANN LIVINGSTON,
           *Chief Judge*,
       JOSÉ A. CABRANES,
       WILLIAM J. NARDINI,
           *Circuit Judges*.

_____

ESTHER WILDER,

       *Plaintiff-Appellant-Cross-Appellee*,

       v.                                      24-1436 (L)
                                                  24-1567 (XAP)

SARAH HOILAND,

       *Defendant-Appellee-Cross-Appellant*.
_____

| For Plaintiff-Appellant-Cross-Appellee: | MATTHEW HERSH, Mestaz Law, Phoenix, AZ. |
|---|---|
| For Defendant-Appellee-Cross-Appellant: | GUY COHEN and Danielle C. Zolot, Davis+Gilbert LLP, New York, NY. |

Appeal from a judgment and order of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Esther Wilder ("Wilder"), a faculty member at Lehman College of The City University of New York ("CUNY"), commenced this action alleging that Sarah Hoiland ("Hoiland"), a faculty member at CUNY's Hostos Community College, infringed her copyright during a presentation Hoiland made at an academic conference in February 2019. The parties filed cross-motions for summary judgment. The district court granted summary judgment to Hoiland on her affirmative defense of fair use. In a separate order, the district court then denied Wilder's Rule 59(e) motion seeking to alter or amend the judgment and denied Hoiland's motion for attorney's fees and costs. On appeal, Wilder contends that the district court erred in granting summary judgment in favor of Hoiland and denying her Rule 59(e) motion. Hoiland cross-appeals, arguing that the district court abused its discretion in denying her motion for attorney's fees.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal to which we refer only as necessary to explain our decision to **AFFIRM**.

**I.    Summary Judgment**

"We review without deference the district court's grant of summary judgment when, as here, the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 177

---

[1] Wilder has moved to strike portions of Hoiland's briefs related to this cross-appeal. The first motion, to strike a reference to the Civil Appeals Mediation Program ("CAMP") proceedings made in Hoiland's opening brief, is GRANTED. *See* Local Rule 33.1(e) ("Information shared during a CAMP proceeding is confidential and is not included in court files or disclosed to the judges of this court . . . . The attorneys and other participants are prohibited from disclosing what is said in a CAMP proceeding[.]"). The second, which challenges portions of Hoiland's cross-appeal reply brief as an improper sur-reply, is DENIED. Federal Rule of Appellate Procedure 28.1(c)(4) limits a cross-appeal reply brief "to the issues presented by the cross-appeal." But any references Hoiland makes to the merits of Wilder's appeal clearly address whether Wilder's copyright infringement claim is objectively unreasonable, which is a critical issue on Hoiland's cross-appeal of the district court's denial of her fees motion. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016).

(2d Cir. 2024) (quoting *Loomis v. ACE Am. Ins. Co.*, 91 F.4th 565, 572 (2d Cir. 2024)). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although fair use "presents a mixed question of law and fact, it may be resolved on summary judgment where, as here, the material facts are not in dispute." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 36 (2d Cir. 2021), *aff'd*, 598 U.S. 508 (2023).

Section 107 of the Copyright Act permits unauthorized use or reproduction of copyrighted works "for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research." 17 U.S.C. § 107. The statutory framework provides four nonexclusive factors courts should consider when deciding if a particular use is "fair":

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* "Given the diverse array of copyrightable material, fair use is a 'flexible' concept, whose application varies depending on the context." *Hachette*, 115 F.4th at 179 (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 20 (2021)).

Wilder challenges the district court's determination that Hoiland's use of text Wilder wrote ("Unit 7H") for a faculty development course on quantitative reasoning constitutes fair use. For the reasons stated below, we agree with the district court.

The first fair use factor—the purpose and character of the allegedly infringing work—requires us to "consider two sub-factors: (i) the extent to which the secondary use is transformative

3

and (ii) whether the secondary use is commercial in nature." *Id.* Transformativeness is "whether the new work merely supplants the original, 'or instead adds something new, with a further purpose or different character, altering the [original] with new expression, meaning, or message.'" *Id.* (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). As to commerciality, "[t]he crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985).

Here, the purpose and character of Hoiland's use of the Unit 7H text was distinctly different from Wilder's original intent and purpose in creating the material. According to Wilder, she wrote Unit 7H as a subunit within a faculty development course she designed to improve teachers' ability to teach quantitative reasoning. Unit 7H in particular was meant to "provide[] instructions to faculty on preparing a [quantitative reasoning] assessment plan and instrument in accordance with the[ir] articulated learning goals." Joint App'x 48. Hoiland, who served as the co-director of the faculty development program Wilder designed, later used portions of the Unit 7H text as a visual aid during a breakout presentation to 12 to 20 attendees at a community college conference. Her presentation's purpose was to "disseminate assessment results of [the] . . . faculty development program," "discuss the challenges and successes related to assessment in the community college context," and "share best practices in faculty development related to assessment." Joint App'x 405. Hoiland testified that her audience was "not interested in the particularities of the . . . program" but instead asked about best practices for working with four-year institutions and how faculty participants in the program were recruited and compensated. Joint App'x 210. In short, Wilder's purpose in creating Unit 7H was to teach faculty in a formal course how to create individualized assessment tools to evaluate their teaching whereas Hoiland's

4

use was to comment on the successes and failures of the program and educate those interested in setting up similar initiatives. We agree with the district court that Hoiland's use was sufficiently transformative and even among the "[p]aradigmatic examples of transformative use[]" contemplated by the Copyright Act's preamble. *Hachette*, 115 F.4th at 180 (noting that paradigmatic examples of transformative use include, *inter alia*, comment, teaching, and scholarship).[2]

In assessing the second fair use factor—the nature of the copyrighted work—we give "greater leeway . . . to a claim of fair use where the work is factual or informational" as opposed to "expressive or creative." *Hachette*, 115 F.4th at 187 (internal quotation marks and citation omitted). Wilder does not dispute that Unit 7H is factual and informational.

The third fair use factor asks courts to consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), with a finding of fair use more likely when "small amounts, or less important passages [of the work] are copied," *Hachette*, 115 F.4th at 187 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015)). The district court concluded that this factor tipped slightly in favor of Wilder because Hoiland made use of two-thirds of the Unit 7H text which, while not the heart of the copyrighted work, nonetheless constituted a substantial portion of the material.

As a preliminary matter, we question whether Unit 7H is the appropriate denominator against which to measure Hoiland's use. Unit 7H is a subunit of one of eight units comprising a cohesive course curriculum on quantitative reasoning. In *NXIVM Corp. v. Ross Institute*, we

---

[2] Hoiland's use was also non-commercial, educational, and benefitted the public interest. Although we have said that in the academic context, "profit is ill-measured in dollars," *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989), we agree with the district court's conclusion that there is little record evidence to suggest that Hoiland received or stood to receive professional advancement from her presentation.

5

rejected plaintiffs' attempt to "narrow the denominator . . . by conceptualizing [a] single course manual as separate 'modules.'" 364 F.3d 471, 480–81 (2d Cir. 2004). We said that allowing such gamesmanship would make the third fair use factor "depend ultimately on a plaintiff's cleverness in obtaining copyright protection for the smallest possible unit of what would otherwise be a series of such units intended as a unitary work." *Id.* at 481. Wilder, who claims to have "developed and created most of the instructional material" in the program herself, Joint App'x 47, seems to have intended the course material as a unitary work and—eight years later—registered a copyright over a single subunit to facilitate this suit against Hoiland. The record does not specify exactly what portion or percentage of the course came from Wilder's pen. But even assuming as Wilder argues that Unit 7H is the proper denominator, we would agree with the district court that the third factor at best weighs slightly in favor of Wilder and is not enough to overcome a finding of fair use.

In assessing the fourth fair use factor—market effect—we "focus[] on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy [rather than] the original." *Hachette*, 115 F.4th at 189 (quoting *Authors Guild*, 804 F.3d at 223). When cases arise out of copyright disputes in academia, courts must consider not only the financial market for the work but also "the realities of promotion and tenure in an academic setting" and how a secondary use may damage the original author's academic career. *See Weissmann*, 868 F.2d at 1326. We agree with the district court's analysis—which properly considered the academic context of this case—concluding that the potential market for Unit 7H is limited, and that Hoiland's one-time use does not prevent Wilder from capitalizing on whatever market may exist.

6

In sum, the district court did not err in concluding that Hoiland was entitled to summary judgment on her fair use affirmative defense. Because we affirm the district court's fair use holding, we do not consider the parties' other arguments regarding summary judgment.[3]

## II.     Attorney's Fees

We review a "district court's denial of an application for attorney's fees . . . for abuse of discretion." *Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 151 (2d Cir. 2013). Hoiland contends that the district court abused its discretion in denying her motion for fees both because it failed adequately to explain the reasons for denial and because the facts of this case warrant a fee award as a matter of law. We disagree as to both.

Section 505 of the Copyright Act provides that the district court "may . . . award a reasonable attorney's fee to the prevailing party" in a copyright infringement action. 17 U.S.C. § 505. Although the word "may" in § 505 "clearly connotes discretion" in determining whether to award fees to a prevailing party, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994), that discretion is not without limit. "First, a district court may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng*, 579 U.S. at 202 (internal quotation marks, alteration, and citation omitted). "Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently[.]" *Id.* Third, "several nonexclusive factors" may inform the district court's analysis, including "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (internal quotation marks omitted) (quoting *Fogerty*, 510 U.S. at 534 n.19).

---

[3] Additionally, because Wilder did not raise new controlling decisions or evidence in her Rule 59(e) motion and the district court did not err in the underlying decision, we conclude that its decision to deny that motion was not an abuse of discretion. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

7

The district court did not abuse its discretion in denying fees. Although this case was ultimately not a close one, Wilder's position was not so speculative or remote as to be properly labeled frivolous or objectively unreasonable. Hoiland's presentation reproduced portions of Wilder's copyrighted work essentially verbatim without giving written credit. And while Hoiland's use was plainly fair, Wilder's arguments that this constitutes infringement at least in the academic setting were not "clearly without merit or otherwise patently devoid of legal or factual basis." *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05-CV-5627, 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (Lynch, J.) (internal quotation marks omitted). And because Wilder's claims were not objectively unreasonable or frivolous, a fee award is also not necessary to deter others from bringing such claims in the future. Moreover, Hoiland points to little in the record beyond the sort of contentious pre-litigation correspondence typical of parties engaged in the lead-up to a copyright suit to support her claim of bad faith. *Cf. Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 60 (2d Cir. 2021) (summary order) (affirming district court's denial of fees because, *inter alia*, there was no indication in the record of improper motive beyond an "assertion that Plaintiffs' claims were motivated by the prospect of unjustified statutory damages"). We thus cannot say the district court abused its discretion in denying Hoiland's fee award.

We also reject Hoiland's contention that remand is warranted because the district court failed adequately to explain its decision. We have said that "[a] recitation of the applicable factors or legal standard, standing alone, is normally not sufficient to permit appropriate appellate review." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997). But here the district court cited and discussed multiple decisions to illustrate the types of copyright cases that normally warrant fee awards. Even assuming, as Hoiland argues, that the district court should have provided a more detailed account of how it applied the facts of this case to the factors it considered,

8

"we need not remand for further explanation where the reasons for a district court's decision are clear" as is the case here. *See Zuma Press*, 845 F. App'x at 59 (citing *Orchano*, 107 F.3d at 99). We are therefore satisfied that the district court undertook the "particularized, case-by-case assessment" required. *Kirtsaeng*, 579 U.S. at 202.

\*   \*   \*

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment and order of the district court are **AFFIRMED**.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

9